# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

In re:

STEPHEN B. SHAW and RAQUEL A. SHAW,

     Debtors,

STEPHEN B. SHAW, an individual,

     Defendant/Appellee.

v.

SHERYL WEISS, an individual,

     Plaintiff/Appellee.

Case No. 2:09-CV-01999-KJD-RJJ

**ORDER**

Presently before the Court is Appellant Stephen B. Shaw's appeal from a ruling in bankruptcy court that his debt to Appellee Sheryl Weiss is not dischargeable in bankruptcy.  (See #12 at 5.) Appellee has filed an Answer in response (#13), and Appellant has filed a Reply (#14).  Also before the Court is Appellee's Motion to Dismiss the Appeal (#4), to which Appellant has filed a Response (#7).

**I. Background**

On March 11, 2005, Appellant's wife, Raquel Shaw, entered a Fabulous Freddy's car wash station.  (See #12, Ex. A at 2.)  As she did, she apparently cut off Appellee's husband, Lawrence

Weiss, nearly crashing into his car.  (See id.)  Not content to let the incident slide, Mr. Weiss

approached Mrs. Shaw's car, forced open her car door, and proceeded to "threaten, curse at and spit

on" Mrs. Shaw, in the presence of her two children in the back seat.  (See #12 at 6.)

Mrs. Shaw repaid Mr. Weiss's conduct with a phone call to her husband, Appellant Stephen

B. Shaw, to tell him of Mr. Weiss's actions.  (See #12, Ex. E, Transcript of Proceedings, Monday,

Feb. 23, 2009 at 8–10.)  Mr. Shaw is a chiropractor by trade, a former quarterback for UNLV's

Division I football team, and a martial-arts enthusiast.  (See id. at 30.)  After receiving the phone call

from his wife, Mr. Shaw quickly rushed to the car wash, though he did take the time to "rip[] off" his

button-up shirt and change into a "muscle" t-shirt for the occasion.  (See id. at 48–50; #13 at 6.)

Upon Mr. Shaw's arrival at Fabulous Freddy's, Mrs. Shaw identified Mr. Weiss, who was

still staring at the Shaw's vehicle.  (See #12, Ex. E, Transcript of Proceedings, Monday, Feb. 23,

2009 at 58.)  Mr. Shaw then confronted Mr. Weiss (who was thirty to forty pounds lighter, four to

five inches shorter, and twenty-five years older than Mr. Shaw) about the incident, using expletive-

laced language.  (See id. at 15, 61.)  Ultimately, Mr. Shaw shoved Mr. Weiss, causing him to spin

around and stumble approximately fifteen feet across the car wash, where he collided, head-first,

with a metal cage supporting a large propane tank.  (See id. at 66.)  Mr. Shaw then stood over Mr.

Weiss, and continued his tirade by stating, "If you ever come near my family again, I will [expletive]

you up.  Pick on someone your own size."  (See id. at 67.)  Mr. Shaw then left Fabulous Freddy's,

and two days later, on March 13, 2005, Mr. Weiss died in the hospital as a result of "blunt head

trauma."  (See #12, Ex. A at 4.)

On November 8, 2005, Mrs. Weiss filed suit in Nevada State Court against Mr. Shaw on

behalf of Mr. Weiss's estate.  (See #12, Ex. A.)  Mrs. Weiss later amended her complaint to include

battery and assault claims, including a request for punitive damages.  (See #12, Ex. E, First Amended

Complaint at 11, 14–15.)  The jury received instructions regarding battery, assault, and punitive

damages, and on February 27, 2009, awarded a judgment against Mr. Shaw in the amount of

1  $2,484,770.00.  (See #12, Ex. B.)  The jury also determined that punitive damages should be

2  awarded,[1] and rejected Mr. Shaw's claim of self-defense.  (See #12, Ex. C, D at 22.)

3          On March 20, 2009, while the parties were awaiting the separate trial to determine the

4  amount of punitive damages to be assessed, Mr. Shaw filed a voluntary petition for Chapter 7

5  bankruptcy relief.  (See #12 at 7; #13 at 4.)  On June 2, 2009, Mrs. Weiss filed an adversary

6  complaint against Mr. Shaw in bankruptcy court, seeking to establish that Mr. Shaw's debt to her

7  was not dischargeable in bankruptcy pursuant to an exception in the bankruptcy code under 11

8  U.S.C. § 523(a)(6).  (See #13, Adversary Complaint Objecting to Discharge at 2–3.)  The following

9  day, she also filed a motion for summary judgment against Mr. Shaw, asserting that Mr. Shaw is

10  precluded from opposing her adversary complaint, based on the principle of collateral estoppel.  (See

11  #13 at 4.)  Basically, Mrs. Weiss sought to prevent Mr. Shaw from arguing that his actions were not

12  "willful and malicious," because that factual question had already been decided by a jury in the state

13  court proceedings.  (See #13 at 4.)  Bankruptcy Judge Linda Riegel received two sets of briefings on

14  the issue, (see #13, Transcript of Proceedings, Wednesday, July 15, 2009 at 4–8) as well as oral

15  argument, and on September 15, 2009, granted summary judgment in Mrs. Weiss's favor.  (See #13,

16  Transcript of Proceedings, Monday, August 31, 2009 at 3–17.)  Mr. Shaw has appealed, and now

17  asks this Court to overturn Judge Riegel's ruling granting summary judgment, in order to allow him

18  to litigate the question of whether his actions were "willful and malicious."[2]  (See #12 at 5.)

19  **II. Motion to Dismiss the Appeal**

20          Having read and considered Mrs. Weiss's Motion to Dismiss the Appeal, the Court finds that

21  Mr. Shaw's failure to comply with procedural rules was not egregious enough to warrant dismissal.

22  See Fitzsimmons v. Nolden, 920 F.2d 1468, 1474 (9th Cir. 1990).

23

24          [1] In Nevada, punitive damages are determined at a separate trial, after the jury makes the initial determination
that punitive damages are warranted.  See NRS 42.005(3).

25

26          [2] The Court has jurisdiction to hear this appeal under 28 U.S.C. § 158(a).  In hearing this appeal, the Court
reviews "the bankruptcy court's conclusions of law de novo."  In re Jastrem, 253 F.3d 438, 441 (9th Cir. 2001).

### III. Standard for Summary Judgment

Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See id. at 323. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### IV. Summary Judgment Analysis

As a general rule, those who file for bankruptcy under Chapter 7 receive a discharge of all their debts. See 11 U.S.C. § 727(a). However, some debts are not dischargeable under Chapter 7 and are therefore enforceable even after bankruptcy has been granted. See id. § 523(a). One such exception occurs where a debtor inflicts a "willful and malicious injury" on another person. See id. § 523(a)(6). On appeal, Mr. Shaw argues that the jury in state court did not find that he inflicted a willful and malicious injury on Mr. Weiss, pointing to the instructions given to the jury when it found Mr. Shaw liable for Mr. Weiss's death. (See #12 at 7–13.) Mr. Shaw therefore concludes that collateral estoppel does not preclude him from litigating that issue in bankruptcy court, in an attempt to discharge his debt to Mr. Weiss's estate. (See id.)

#### A. Collateral Estoppel

The principle of collateral estoppel, increasingly called issue preclusion, dictates that "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Allen v. McCurry, 449 U.S. 90, 94 (1980). Federal courts "must give to a state-court judgment the

1   same preclusive effect as would be given that judgment under the law of the State in which judgment

2   was rendered." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984).

3          For collateral estoppel to apply in Nevada, "(1) the issue decided in the prior litigation must

4   be identical to the issue presented in the current action; (2) the initial ruling must have been on the

5   merits and have become final; and (3) the party against whom the judgment is asserted must have

6   been a party in privity with a party to the prior litigation." LaForge v. State, Univ. & Cmty. Coll.

7   Sys. of Nev., 997 P.2d 130, 133 (2000). Collateral estoppel applies in Nevada "even though the

8   causes of action are substantially different, if the same fact issue is presented." Id. at 134. Mr. Shaw

9   does not contest that prongs two and three of this test are met. (See #12 at 7–13.) Instead, he argues

10  only that the issue decided in state court was not identical to the issue presented before the

11  bankruptcy court. (See id.)

12         B. 11 U.S.C. § 523(a)(6)

13         11 U.S.C. § 523(a)(6) provides that a debt is not dischargeable in bankruptcy if the debt arises

14  out of a "willful and malicious injury by the debtor to another entity." In order to assess whether this

15  provision applies, the Court must address willfulness and maliciousness as two distinct prongs, and

16  must treat each separately. See In re Jercich, 238 F.3d 1202, 1207–09 (9th Cir. 2001) (addressing

17  willfulness and maliciousness in turn). If either is found lacking, the debt is dischargeable. See In re

18  Su, 290 F.3d 1140, 1147 (9th Cir. 2002) (remanding where the bankruptcy court failed to make

19  "appropriate findings on the issue of malice").

20         1. Willfulness

21         First, the Supreme Court has stated that the "word 'willful' in (a)(6) modifies the word

22  'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a

23  deliberate or intentional act that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998)

24  (emphases in original). The Supreme Court went on to explain that "the (a)(6) formulation triggers

25  in the lawyer's mind the category 'intentional torts' as distinguished from negligent or reckless

26  torts." Id. In other words, § 523(a)(6)'s willful injury requirement is met "only when the debtor has

5

1    a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to

2    result from his own conduct." In re Su, 290 F.3d at 1142.

3         Battery and assault have long been considered classic examples of willful injuries.  See, e.g.,

4    In re Pitner, 696 F.2d 447, 449 (6th Cir. 1982) ("It has been a general rule that liabilities arising from

5    assault and battery are considered as founded on willful and malicious injuries"); In re Elder, 262

6    B.R. 799, 808 (C.D. Cal. 2001) ("If someone hits another and is found liable for assault and battery,

7    the debt is not dischargeable under Geiger."); 4 Collier on Bankruptcy P523.12[4] (Matthew Bender,

8    15th Ed. Rev., 2010) ("Liabilities arising from assault or assault and battery are generally considered

9    as founded upon a willful and malicious injury and are therefore within the exception.").  However,

10    battery and assault would not fall within § 523(a)(6)'s exemption if it is not clear from the jury

11    instruction whether the jury verdict was based on intentional or reckless conduct.  Cf. In re Barbosa,

12    545 F.3d 702, 709 (9th Cir. 2008) (finding that the bankruptcy court "clearly erred" because there

13    was a "possibility that the jury found Appellants liable . . . based on recklessness").

14         Here, In Mrs. Weiss's civil suit against Mr. Shaw, the Nevada State Court instructed the jury

15    on Mrs. Weiss's claims of battery and assault.  (See #12, Ex. D at 20–21.)  It appears from the record

16    that the jury was not required to specify whether it awarded its judgment on the basis of assault,

17    battery, or both.  (See #12, Exs. B–C, D at 20–21.)  The Court will therefore assume that the jury

18    could have based its judgment on either claim.  Next, the court then also instructed the jury on Mrs.

19    Weiss's request for punitive damages.  (See #12, Ex. D at 31–34.)

20         Mr. Shaw argues that these jury instructions were not sufficient to infer willfulness as

21    required by § 523(a)(6).  In order for Mr. Shaw to prevail on his argument, he must satisfy two steps.

22    First, he must show that either the battery instruction, or the assault instruction, was insufficient to

23    infer that he willfully caused injury to Mr. Weiss.  Second, he must show that the jury instruction on

24    punitive damages was also insufficient to infer that he willfully caused injury to Mr. Weiss.  See In re

25    Duncan, 448 F.3d 725, 729–30 (4th Cir. 2006) (analyzing a jury's verdict regarding wrongful death,

26    and the jury's assessment of punitive damages, to determine whether the issue of willfulness had

1  been decided in state court).  If he fails as to either step, collateral estoppel will apply with respect to

2  § 523(a)(6)'s willfulness prong.

3  　　　Mr. Shaw argues that the jury instructions with respect to battery and assault were insufficient

4  to infer that he acted willfully.  (See #12 at 7–13.)  The Court disagrees.  The jury instruction with

5  respect to battery read:

6  　　　The Plaintiff claims that Defendant Steve Shaw committed a battery on Lawrence Weiss.  To
   　　　establish this claim, Plaintiff must prove all of the following:

7
   　　　　　1.　　That Steve Shaw touched Lawrence Weiss with the intent to harm or offend
8  　　　　　　　him;
   　　　　　2.　　That Lawrence Weiss did not consent to the touching; and
9  　　　　　3.　　That Lawrence Weiss was harmed by Steve Shaw's conduct;

10  (See #12, Ex. D at 20.)  The instruction clearly states that Mr. Shaw "touched Lawrence Weiss with

11  the intent to harm or offend."  Such an instruction does not encompass any theory of negligence or

12  recklessness, compare In re Barbosa, 545 F.3d at 209, and leaves no doubt that the jury was to

13  determine whether Mr. Shaw engaged in an intentional tort.  See Geiger, 523 U.S. at 61.  As such,

14  the jury—if it based its judgment on battery—necessarily decided that Mr. Shaw acted intentionally

15  to create a willful injury.  Id.

16  　　　With respect to the instruction on assault, the Court reaches the same conclusion.  The assault

17  instruction provided:

18  　　　The Plaintiff claims that Defendant Steve Shaw assaulted Lawrence Weiss.  To establish this
   　　　claim, the Plaintiff must prove all of the following:
19
   　　　　　1.　　That Steve Shaw acted, intending to cause harmful contact, [and]
20  　　　　　2.　　That Lawrence Weiss reasonably believed that he was about to be touched in a
   　　　　　　　harmful manner;
21
22  (See #12, Ex. D at 21.)  If the jury based its judgment on Mrs. Weiss's claim of assault, it decided

23  that "Steve Shaw acted, intending to cause harmful contact."  Here again, it is beyond question that

24  the assault instruction deals with an intentional tort, as opposed to negligence or recklessness.

25  　　　Mr. Shaw, however, counters that the jury instructions "describe an intent to commit battery,

26  but not an intent to injure."  (#12 at 12, citing In re Muchler, 2007 WL 4730930 (Bankr. M.D. Fla.).)

7

1   In the same vein, Mr. Shaw also argues that he did not "intend to cause the circumstances which

2   occurred." (#12 at 13.)  In other words, Mr. Shaw admits that the jury necessarily decided that he

3   intended to batter Mr. Weiss, but argues that it did not decide that he intended to seriously injure or

4   kill Mr. Weiss, and that Mr. Shaw's debt should be discharged because the harm he caused was

5   much greater than the harm he intended to inflict.

6          Mr. Shaw's arguments on this point cannot be taken seriously.  First, and most importantly,

7   Ninth Circuit precedent precludes Mr. Shaw's argument in this regard.  See In re Baldwin, 249 F.3d

8   912, 918 (9th Cir. 2001) ("The fact that [the plaintiff] made a claim for an 'intentional tort,' alleging

9   that [the defendant] 'violently struck' him is enough to allege that [the defendant] acted with 'the

10  actual intent to cause [the plaintiff] injury.'").  And with good reason.  It is a basic principle of law,

11  known to first-year law students, that when an individual commits an intentional tort, such as battery,

12  that person is liable for all harm proximately caused by the individual's intentionally wrongful

13  action.  See, e.g., Vosburg v. Putney, 50 N.W. 403, 403–04 (Wis. 1891) (establishing the egg-shell

14  plaintiff rule, and noting that "the intention to do harm is the essence of an assault" where "the

15  intended act is unlawful").  Moreover, as Judge Riegel correctly noted, adopting Mr. Shaw's

16  interpretation of § 523(a)(6) would lead to an absurd result.  (See #13, Transcript of Proceedings,

17  Wednesday, July 15, 2009 at 16–17) ("[I]f I hit somebody, intended to hit them, and they didn't die

18  that debt would be not discharged.  But if they died, the debt would be discharged , and that's just an

19  absurd result.").)  As a jury has already determined that Mr. Shaw committed an intentional

20  battery—not a reckless or negligent one—collateral estoppel precludes Mr. Shaw from relitigating

21  the willfulness prong of § 523(a)(6).[3]

22                 2. Maliciousness

23         Maliciousness requires a showing that the injury was: "(1) a wrongful act, (2) done

24  intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse."  In re

25  _____

26       [3] Having concluded that the jury necessarily decided the question of willfulness based on the assault and battery
     instructions given to them, the Court finds it unnecessary to address the jury instructions regarding punitive damages.

1   <u>Jercich</u>, 238 F.3d at 1209.  The maliciousness prong shares some overlap with the willfulness prong,

2   though the two are separate inquiries.  <u>See In re Barbosa</u>, 545 F.3d at 711.

3          Here, Mr. Shaw does not appear to address the maliciousness prong.  (<u>See</u> #12 at 5–13

4   (addressing willfulness).)  In any event, argument on the point would be fruitless, as the jury

5   instructions also established maliciousness, and are entitled to the preclusive effect of collateral

6   estoppel.  First, it is beyond contention that battery and assault are wrongful acts.  <u>See, e.g.</u>, <u>Gandy v.</u>

7   <u>Nevada</u>, 607 P.2d 581, 583 (1980) (noting that assault is "wrongful"); <u>In re Clayton</u>, 168 B.R. 700,

8   708 (Bankr. N.D. Cal. 1994) (listing tortious battery and conversion as typical wrongful acts).

9   Second, it has already been established above that Mr. Shaw's act was done intentionally.  Third, it is

10  well-established that, by definition, battery and assault necessarily cause legal—and often

11  physical—injury.  <u>See, e.g.</u>, <u>In re Baldwin</u>, 249 F.3d at 918 ("The fact that [the plaintiff] made a

12  claim for an 'intentional tort,' alleging that [the defendant] 'violently struck' him is enough to allege

13  that Baldwin acted with 'the actual intent to cause [the plaintiff] injury.'").  The jury instructions

14  reflected this definition.  (<u>See</u> #12, Ex. D at 20–21.)  Fourth and finally, Mr. Shaw offers no basis

15  upon which the Court could conclude that his actions were done with just cause or excuse; (<u>see</u> #12

16  at 5–13) indeed, the jury rejected his claims of self-defense.  (<u>See</u> #12, Ex. D at 23.)  Judge Riegel

17  therefore correctly issued summary judgment in favor of Mrs. Weiss, and against Mr. Shaw.

18  **V. Conclusion**

19         Accordingly, **IT IS HEREBY ORDERED** that Appellee Mrs. Shaw's Motion to Dismiss the

20  Appeal (#4) is **DENIED**;

21         **IT IS FURTHER ORDERED** that the bankruptcy court's grant of summary judgment in

22  favor of Mrs. Weiss is **AFFIRMED**.

23         DATED this 20th day of September 2010.

24

25  _____

26  Kent J. Dawson
    United States District Judge

9